**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 14, 2007**

**Charles R. Fulbruge III**
**Clerk**

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-20960

JOHN R. LOZANO AND SUSIE LOZANO,

Plaintiffs-Appellants,

VERSUS

OCWEN FEDERAL BANK, FSB,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before REAVLEY, DeMOSS, and BENAVIDES, Circuit Judges.

DeMOSS, Circuit Judge:

John and Susie Lozano appeal the district court's order granting summary judgment in favor of Ocwen Federal Bank on the Lozanos' claims related to Ocwen's foreclosure of their home in Houston, Texas.[1] The Lozanos sought a declaratory judgment to void the foreclosure and remove the cloud of title on the property. They

---

**[1]In 2005 Ocwen Federal Bank transferred its mortgage servicing business to Ocwen Loan Servicing, LLC, which has succeeded to the rights and obligations of the former entity. This opinion will refer to the Defendant-Appellee simply as "Ocwen."**

1

also sought damages for alleged violations of Texas and federal law governing foreclosures. The district court granted Ocwen's motion for summary judgment and purported to dismiss the entire case. For the reasons stated below, we affirm in part and reverse in part.

I.

On April 15, 1980, the Lozanos executed a promissory note for $76,500, payable to University Savings over a thirty year term at 12% interest, for the purchase of a home. They also executed a deed of trust granting University Savings a lien on their homestead. The Lozanos submitted cancelled checks showing that they thereafter made two unscheduled payments to University Savings on the note: a $12,000 payment on September 30, 1980, and an $11,000 payment on June 1, 1981. The parties agree that University Savings never credited these payments to the balance owed on the note.

University Savings subsequently transferred the note and deed of trust to Federal Home Loan Bank of Dallas in 1989. Between 1989 and 1997, when Ocwen purchased the note and deed of trust, they changed hands several times. According to the district court, the note and deed of trust were subject to the following transfers: first, on May 9, 1990 the note was assigned from Federal Home Loan Bank of Dallas to the Resolution Trust Company ("RTC") as receiver for University Federal Savings Association; second, on November 15, 1990 the note was assigned from RTC as receiver for University Savings Association to RTC as receiver for University Federal Savings Association; and third, in an undated assignment, the note

2

was assigned from RTC as receiver for University Federal Savings Association to Ryland Mortgage Company. Following the transfer to Ryland there is a gap in the chain of title. Ocwen purchased the note, by that time apparently in default, from Credit Suisse First Boston Mortgage Capital LLC on May 31, 1997. On December 17, 1997, the deed of trust was also transferred to Ocwen. Thereafter, Ocwen sold the note to LaSalle National Bank in 1998, but has remained the servicer of the note.[2]

The Lozanos filed for bankruptcy in 1996, 1998, and 2000. During these bankruptcies the Lozanos asserted, and the bankruptcy court accepted, that the Lozanos owed a substantial sum on the note at issue. Additionally, the Lozanos entered into two forbearance

---

**[2]It is undisputed that Ocwen sold the note to LaSalle Bank in 1998, but remains the "servicer" of the note. The Texas Property Code defines a mortgage servicer as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." TEX. PROP. CODE § 51.0001(3). To the extent the Lozanos argue that Ocwen lacked the power to foreclose because it was only the servicer, and not the owner of the note, we find that argument unpersuasive. Courts have recognized that loan servicers, via agreement with the note's owner, can obtain the ability to foreclose. *See, e.g., Pilcher v. Direct Equity Lending,* 189 F. Supp. 2d 1198, 1205 (D. Kan. 2002). And the language of the Texas Property Code itself indicates that mortgage servicers can have the power to foreclose. *See* TEX. PROP. CODE § 51.002(d) (requiring the mortgage *servicer* to give notice before foreclosing). Although Ocwen does not own the note, the Lozanos have presented no evidence that Ocwen did not retain the power to foreclose via agreement with LaSalle.**

agreements with Ocwen, one in 1999 and one in 2001, where they acknowledged default on the note and agreed to modify the note's terms in exchange for Ocwen's promise not to foreclose at that time. As part of the 2001 forbearance agreement, the Lozanos also represented that they had no defenses or setoffs with respect to their obligation to pay the note.

In 2002, the Lozanos again defaulted on the note and Ocwen foreclosed and purchased the property at a foreclosure sale on March 3, 2003. The Lozanos responded by bringing suit in Texas state court seeking declaratory relief and damages based on their 1980 and 1981 prepayments and Ocwen's alleged violations of notice and verification requirements under state and federal law. Ocwen removed to federal court on the basis of diversity jurisdiction.

After fairly extensive discovery, the parties filed cross motions for summary judgment. The main thrust of the Lozanos' argument was that the foreclosure was void because, considering the prepayments they made in 1980 and 1981, they had paid the note in full by 1990. Ocwen argued it was entitled to summary judgment based on, *inter alia*, the affirmative defenses of judicial estoppel (based on assertions made in the prior bankruptcy proceedings) and "estoppel" (based on the forbearance agreements). The district court granted Ocwen's motion[3] and denied the Lozanos' motions for

---

**[3]The district court found Ocwen was entitled to summary judgment on several independent grounds: judicial estoppel, promissory estoppel, and statute of limitations.**

4

summary judgment and for leave to amend their complaint, and it entered a take nothing judgment against the Lozanos. The Lozanos timely appealed.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 219 (5th Cir. 2005). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Applying this standard, we view the evidence in the light most favorable to the non-movant. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005).

The Lozanos brought claims for (A) a declaratory judgment to set aside the deed executed on the foreclosure sale, and (B) damages for alleged violations of the Texas Deceptive Trade Practices Act (DTPA), TEX. BUS. & COM. CODE § 17.46(b)(12) (Vernon 2006), and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692.[4] The district court purported to dispose of each claim in its Opinion and Order on Summary Judgment.

---

[4]**The Lozanos also alleged a violation of the FDCPA in support of their declaratory judgment claim, and we discuss both of the FDCPA claims in part-two of our declaratory judgment discussion.**

5

A. Declaratory Judgment

The Lozanos sought a declaratory judgment to set aside the foreclosure on three grounds: (1) they had previously paid the entire the balance of the note, (2) Ocwen allegedly failed to comply with the Texas Property Code's foreclosure notice provisions, and (3) Ocwen allegedly violated the FDCPA.

1. Pre-payment of the note

The district court held that judicial estoppel, promissory estoppel, and the statute of limitations barred the Lozanos from asserting that, by virtue of their prepayments to University Savings in 1980 and 1981, they had fully paid the note by 1990. Because we affirm on quasi estoppel grounds, we need not decide whether judicial estoppel or the statute of limitations also bar this claim.

In the 1999 and 2001 forbearance agreements, the Lozanos made several promises in exchange for Ocwen's promise not to foreclose based on the pending delinquencies. The 1999 agreement provided that Ocwen would modify the note to reflect an unpaid balance of $90,148, and the Lozanos promised to pay that balance at 12% interest over twenty-seven years by monthly payments of $938.85. In the 2001 agreement, the Lozanos acknowledged another default and affirmed their obligation to pay the balance of the note, which they stated was $85,295.40. In that agreement, the Lozanos further conceded that "by their execution and delivery hereof, that they have no defense, setoff or counterclaim with respect to the default

6

or their obligation under the Note and Mortgage."

Citing the Lozanos' representations and promises in the forbearance agreements, the district court held the doctrine of promissory estoppel prevented the Lozanos from asserting that they fully paid the mortgage in 1990. The court agreed with Ocwen that (1) the Lozanos made representations, (2) the Lozanos could foresee that those representations would be relied upon by Ocwen, and (3) Ocwen substantially relied upon the representations to its detriment by not foreclosing on the property. *See "Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 937 (Tex. 1972) (discussing the elements of promissory estoppel).

The Lozanos argue on appeal that promissory estoppel is inapplicable here because the forbearance agreements constitute valid contracts, and Texas courts have held that promissory estoppel may only be applied when no valid contract exists. *See Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 636-37 (Tex. App.--Houston [14th Dist.] 2004, pet. abated) (collecting cases). We agree the district court may have erred in styling this ground for relief as promissory estoppel. Nonetheless, the Lozanos made representations in a binding contract, and now seek to take a position inconsistent with those representations. Prudence and caselaw dictate that this cannot be allowed.

Estoppel by contract, also known as "quasi estoppel," forbids a party to a contract from taking a position inconsistent with the

7

terms of the contract when that position prejudices another. *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721-22 (Tex. App.--Dallas 2004, no pet.). "The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which . . . he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). In other words, the doctrine forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.--Corpus Christi 1994, writ denied).

In the 1999 forbearance agreement, the Lozanos agreed to pay more than $90,000 over the following twenty-seven years. In the 2001 forbearance agreement, they reaffirmed their obligations under the note and acknowledged that they had no defenses to their obligation to pay. But now they claim they do have a defense: that they have previously paid the note in full in 1990. That claim is patently inconsistent with the representations the Lozanos made in the forbearance agreements. Further, Ocwen, who agreed not to foreclose in 1999 and 2001 despite the Lozanos' default, would be prejudiced by the Lozanos' new position.[5] In sum, it would be

---

**[5]The facts required for a finding of quasi estoppel, namely the promises contained in the forbearance agreements, are present in the record and are beyond dispute.**

8

unconscionable to allow the Lozanos to accept the benefit of the forbearance agreements and then allow them to take an inconsistent position to avoid its obligations. *See id.*

The Lozanos argue that Ocwen did not raise the quasi estoppel argument until appeal and thus waived it. However, Ocwen pleaded "estoppel" generally as an affirmative defense and moved for summary judgment on "estoppel" grounds. This Court has referred to quasi estoppel as simply "estoppel." *See, e.g., Bott v. J.F. Shea Co.,* 299 F.3d 508, 512 (5th Cir. 2002) ("[W]e [have] noted that a precise description of the core basis of *estoppel* is that one who retains benefits under a transaction cannot avoid its obligations and is estopped to take an inconsistent position." (internal quotation marks omitted) (emphasis added)). This position is in accord with the view of Texas courts, whose interpretation of the law of "estoppel" we apply. *See Eckland Consultants, Inc. v. Ryder, Stilwell Inc.,* 176 S.W.3d 80, 88 n.5 (Tex. App.--Houston [1st Dist.] 2004, no pet.) ("A general plea of estoppel is sufficient to raise the affirmative defense of quasi-estoppel.").

Under the facts of this case, and given the similarity of the doctrines of promissory estoppel and quasi estoppel, we find that Ocwen's styling of its argument as "estoppel" instead of "quasi estoppel" does not prohibit our consideration of that argument here. In reaching that conclusion we are influenced by the fact that Ocwen pled and consistently argued that the Lozanos were

9

estopped from asserting that the note was fully paid in 1990 when they acknowledged and affirmed the debt in the forbearance agreements in 1999 and 2001. Further, Ocwen submitted the forbearance agreements into evidence in support of this argument. As a result, the Lozanos have been on notice of this argument since Ocwen first raised it in their answer as an affirmative defense.[6]

Lastly, we acknowledge that the district court, after discussion of the applicable facts, found the elements for promissory estoppel satisfied. "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw v. DSC Commc'ns Corp*., 255 F.3d 254, 258 (5th Cir. 2001). The record indicates the Lozanos took a position in the forbearance agreements and accepted the benefits of that position and now seek to take an inconsistent position that would prejudice Ocwen. Thus, the record fully supports the application of quasi estoppel, see *Lopez,* 22 S.W.3d at 864, and we may affirm on that basis. *See Holtzclaw*, 255 F.3d at 258.

Because we agree with the district court that the Lozanos are

---

**[6]We note that the Texas Supreme Court has gone even further and applied estoppel principles even when not argued at all. *See "Moore" Burger, Inc. v. Phillips Petroleum, Co.*, 492 S.W.2d 934, 936 (Tex. 1972) (considering whether estoppel applied when a party did not mention the doctrine but pleaded facts that gave rise to that legal concept).**

estopped from taking a position contrary to the position they took in the forbearance agreements, we affirm the dismissal of the prepayment claim.

2. Alleged violations of the Texas Property Code

In addition to arguing the foreclosure was void because they had already paid the mortgage in full, the Lozanos also sought to void the foreclosure on the basis that Ocwen violated the notice requirements in the Texas Property Code. *See* TEX. PROP. CODE ANN. § 51.002(d) (Vernon 2006) (requiring mortgage servicers to serve debtors in default with written notice of default and give the debtor at least twenty days to cure the default before foreclosing); *see also Mitchell v. Texas Commerce Bank-Irving*, 680 S.W.2d 681, 682 (Tex. App.--Fort Worth 1984, writ ref'd n.r.e.) (holding that failure to comply with section 51.002 invalidates the foreclosure).

Ocwen did not move for summary judgment on this claim, and although the district court granted summary judgment and purportedly dismissed the entire case, it did not address this claim in its Opinion and Order on Summary Judgment. Generally, "a district court may not grant summary judgment *sua sponte* on grounds not requested by the moving party." *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 632 (5th Cir. 2004) (quoting *John Deere Co.*, v. *Am. Nat'l Bank,* 809 F.2d 1190, 1192 (5th Cir. 1987)). An exception exists when the district court gives a party ten days notice; in

11

those situations a court may grant summary judgment *sua sponte* on grounds not urged in a pending motion. *See Judwin Properties, Inc., v. U.S. Fire Ins. Co.,* 973 F.2d 432, 436-37 (5th Cir. 1992).

Here the record does not indicate the district court gave any notice to the Lozanos before dismissing this claim *sua sponte*. Consequently, the Lozanos were not on notice to present arguments on this claim in their response to Ocwen's summary judgment motion, and the court did not have the benefit of the parties' arguments.

Ocwen argues that this claim is dependent on the Lozanos' prepayments claim; that is, if we do not recognize the prepayments this claim must fail as a matter of law. This argument is unpersuasive. Section 51.002(d) contains a notice requirement that may be violated even if the debt is valid. *See* TEX. PROP. CODE ANN. § 51.002(d). Further, the statute of limitations does not bar this claim. It is undisputed the foreclosure occurred in March 2003 and the Lozanos filed this suit two-months later in May 2003, well within the allowed period. Consequently, we reverse and remand for consideration of the Lozanos' Texas Property Code claim.

3. Alleged violation of the Fair Debt Collection Practices Act

The third ground for a declaratory judgment was a claim under the FDCPA, and the Lozanos also sought damages for the alleged violation this statute. The FDCPA provides in pertinent part:

> If the consumer notifies the debt collector in writing within . . . [thirty days] that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt

12

collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

The Lozanos alleged that they timely requested proof of the validity of the debt from Ocwen and that Ocwen failed to provide that information before foreclosing. However, Ocwen did not mention the FDCPA claim in its motion for summary judgment. The district court dismissed the claim *sua sponte* finding that, to the extent the Lozanos based this claim on their prepayments, it was barred. Alternatively, the court found this claim was not accurately pled to allow the court to analyze it.[7] In particular, the court noted the Lozanos did not allege that Ocwen was a "debt collector" as required by § 1692g(b).

The Lozanos argue that the court erred in dismissing this claim *sua sponte* because the court did not give prior notice. *See Baker,* 364 F.3d at 632; *see also Washington v. Resolution Trust Corp.,* 68 F.3d 935, 939 (5th Cir. 1995) (allowing a district court to grant summary judgment *sua sponte*, but only after giving ten days notice). For the same reasons we reversed the *sua sponte*

---

**[7]The court also dismissed this claim on statute of limitations grounds. However, this claim is not barred by the applicable one-year statute of limitations because it was filed within several months of the alleged violation. *See* 15 U.S.C. § 1692k(d).**

13

dismissal of the Texas Property Code claim, *see supra* Part II(A)(2), we reverse the dismissal of the FDCPA claim.

Even if we characterized this action as a *sua sponte* dismissal for failure to state a claim under Rule 12(b)(6), as Ocwen argues, we would reach the same result. We have held that a district court is "authorized to consider the sufficiency of the complaint on its own initiative." *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991). And if the court finds the complaint fails to state a claim, it may dismiss "'as long as the procedure employed is fair.'" *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (quoting 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 301 (2d ed. 1990)). We have recently held that a district court's failure to give notice prior to *sua sponte* dismissal for failure to state a claim was unfair under the circumstances. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). In *Carroll*, we observed that other circuits have held "district courts should not dismiss claims *sua sponte* without prior notice and opportunity to respond." *Id.* (citing *Fredyma v. AT&T Network Sys., Inc.*, 935 F.2d 368 (1st Cir. 1991); *Thomas v. Scully*, 943 F.2d 259 (2d Cir. 1991); *Smith v. Boyd*, 945 F.2d 1041 (8th Cir. 1991)). While stopping short of adopting a bright line rule, *Carroll* noted that our prior case law has "suggested that fairness in this context requires both notice of the court's intention and an opportunity to respond." *Id.* (internal quotation marks omitted).

14

We do not always require notice prior to *sua sponte* dismissal for failure to state a claim, as long as the plaintiff has alleged his "best case." *See Bazrowx*, 136 F.3d at 1054 (citing *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986)). In *Jacquez* we held, in the context of a § 1983 action, that "[a]t some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez*, 801 F.2d at 792. The Court in *Jacquez* dismissed a claim after the plaintiff filed a deficient complaint and repeatedly declared the adequacy of that complaint in a lengthy response to defendant's motion to dismiss. *Id.* Thus, *Jacquez* is readily distinguishable because there the plaintiff repeatedly represented that his complaint adequately stated the cause of action and refused to file a supplemental complaint even in the face of a motion to dismiss. *See id.*

In the case at bar, the Lozanos had no notice that their complaint was deficient. Notice would have allowed the Lozanos an opportunity to seek leave to amend their complaint to allege that cause of action properly. Based on our *de novo* review, we hold that the district court erred in dismissing the FDCPA claim *sua sponte* without notice. *See Carroll,* 470 F.3d at 1177.

B. Texas Deceptive Trade Practices Act

In addition to seeking a declaratory judgment on the three

15

grounds discussed above, the Lozanos sought damages based on an alleged violation of the DTPA, TEX. BUS. & COM. CODE § 17.46. That section prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of trade or commerce." *Id.* The Lozanos argue that Ocwen violated section 17.46(b)(12), which defines false, misleading, or deceptive acts or practices as including: "represent[ations] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." *Id.* § 17.46(b)(12).

The district court's Opinion and Order on Summary Judgment dismissed this claim because the court found it barred by the statute of limitations. *See id.* § 17.565. The court did not mention the claim again in the opinion and it appears the statute of limitations was the only ground relied upon by the district court to dismiss.

The Lozanos argue they filed the lawsuit, which included the DTPA claim, less than three months after the foreclosure.[8] They argue the DTPA claim is based on Owcen's alleged misrepresentations during the foreclosure proceedings in March 2003. The Lozanos filed suit in May 2003, within the two-year statute of limitations applicable to a DTPA claim. *See id.* Thus, dismissing the DTPA claim

---

**[8]We note that the Lozanos DTPA claim was not mentioned as a ground for summary judgment in Ocwen's motion. However, the Lozanos have not argued on appeal that the district court erred by considering this claim *sua sponte*.**

on statute of limitations grounds was error and we remand.

## C. Denial of Lozanos' motion for leave to amend complaint.

Lastly, the Lozanos appeal the district court's denial of their motion to amend their complaint to allege fraud. The Lozanos' original complaint did not allege fraud, but the district court allowed the Lozanos to supplement it to allege a fraud claim. On September 6, 2004, the court again permitted the Lozanos to amend their complaint, this time to add the FDCPA claim. However, absent from this amended complaint was any mention of the fraud claim.

On January 21, 2005, the Lozanos sought leave to amend their complaint to re-allege the fraud claim. The district court denied the motion, finding, among other things, that the Lozanos had been aware of the factual underpinnings of the fraud claim for some time, and that they had not been diligent in pursuing the claim.

"Whether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). Although Rule 15(a) states that leave to amend "shall be freely given when justice so requires," the district court may consider that the moving party failed to take advantage of earlier opportunities to amend. FED. R. CIV. P. 15(a); *Quintanilla v. Texas Television Inc.*, 139 F.3d 494, 499 (5th Cir. 1998); *see also Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing "undue delay" as a factor in determining

17

whether leave to amend should be granted).

Given the procedural background discussed above, and based on our deferential review, we cannot say the district court abused its discretion in denying the Lozanos' motion for leave to amend.

### III.

For the foregoing reasons we affirm the district court's order denying the Lozanos leave to amend their complaint. Further, we affirm the court's order of September 29, 2005, to the extent it dismisses the Lozanos' prepayment claim, and we vacate that order to the extent it dismisses the Lozanos' Texas Property Code claim, their FDCPA claim, and their DTPA claim. We remand for consideration of the Texas Property Code Claim, the FDCPA claim, and the DTPA claim.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.