# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 11, 2009

Charles R. Fulbruge III
Clerk

No. 08-20389

CUDD PRESSURE CONTROL INC

Plaintiff-Appellant

v.

RONNIE ROLES; ROCKY ROLES; STEVE WINTERS; BERT BALLARD;
NELSON BRITTON; MICHAEL FIELDS; GULFPORT ENERGY CORP;
GREAT WHITE PRESSURE CONTROL LLC

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-3568

Before WIENER, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Cudd Pressure Control, Inc. ("Cudd") appeals the district court's grant of summary judgment and imposition of sanctions against it. For the following reasons, we vacate and remand.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## FACTS AND PROCEEDINGS

Cudd is a privately held oilfield services company. Ronnie Roles ("Roles"), Steve Winters ("Winters"), Rocky Roles, Bert Ballard, Nelson Britton, and Michael Fields (collectively, the "Individual Defendants") were all employees of Cudd that quit en masse in August 2006. They were awarded bonuses totaling $6 million to join a newly formed competing company, Great White Pressure Control LLC ("Great White"), and Roles became the President of Great White. A separate company, Gulfport Energy Corp. ("Gulfport"), facilitated many of the investor meetings in launching Great White and provided administrative and support services for a fee.

Cudd was concerned about the mass exodus, and found security footage showing Winters loading several boxes of material onto his truck the night before he quit. Cudd also found an e-mail from Roles to Gulfport in late June 2006 stating that he would need a laptop on which to transfer information. Cudd brought suit against the Individual Defendants, Great White, and Gulfport (collectively, the "Defendants") in November 2006 in Texas state court asserting a violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state law claims of conspiracy, breach of fiduciary duty, misappropriation of trade secrets, and unfair competition. The case was removed to the Southern District of Texas.

After closely controlled discovery, the parties stipulated to dismissal of the RICO charge without prejudice, and the case has since focused on two separate alleged uses of confidential information: (1) creation of the Great White business plan using Cudd financial data, and (2) design of a mini-snubbing unit that Great White purchased from a Canadian company, Mtech Industries Inc. ("Mtech"), but which was designed, in part, in consultation with Winters while he was in Cudd's employ.

In the financial data used in Great White's business plan for investors, which was prepared by Roles, many of the specific numbers for rates charged on equipment and utilization rates for different locations are identical to Cudd's confidential financial numbers. The "Assumptions" spreadsheet specifically states that "2006 YTD as of 5/31/06 numbers were used," even though Great White did not exist until July 20, 2006. In addition, in his deposition, Roles testified that he gave a Cudd profit and loss report to Great White investors "that just verified the information that I had told them." He stated that "I wanted them to see that the numbers for the whole company and the coil tubing and the snubbing, it was a good service line to go into."

As for the mini-snubbing unit, Robert Talk ("Talk"), Cudd's Vice-President of Corporate Technology, submitted an affidavit stating that Cudd had started developing a mini-snubbing unit in April 2006. "Snubbing" is the process of inserting tubing into an oil well while the well remains under pressure. A mini-snubbing unit is a smaller, more flexible version of a full-sized snubbing unit and can work alongside a workover rig to insert pipe into a pressurized well.[1] In April 2006, Cudd believed that there were no mini-snubbing units commercially available (and only one competitor, Team Snubbing, had developed a mini-snubbing unit for its own use). MTech, however, sold a mini-snubbing unit in Canada. Mehtab Khehra ("Khehra"), MTech's President, submitted an affidavit stating that he was contacted by defendant Winters in July 2006 (while Winters was still working for Cudd) and received designs from Winters on Cudd stationery changing the way that its mini-snubbing units were powered and mounted on trucks. Khehra claims that "Winters' suggestions were unique and innovative." In August 2006, Khehra was contacted by Roles, who ordered two of the new units for Great White, which were delivered in December 2006.

[1] The pressure of the well can force pipe upward, so a snubbing unit pushes the pipe back down and overcomes the force due to the pressure of the well.

Khehra stated that these units contained the design changes submitted by Winters in July 2006. Talk stated that neither Winters nor Roles informed Cudd that a mini-snubbing unit was available from MTech and that as a result of working with MTech and the new Winters design, Great White was able to beat Cudd to the marketplace with a mini-snubbing unit.

The district court granted the Defendants' summary judgment motion and additionally sanctioned Cudd $425,000 in attorney's fees. Cudd appeals the grant of summary judgment, the refusal of the district court to grant its Rule 56(f) motion for a continuance to take additional discovery, and the sanctions award, and requests that, upon remand, this case be assigned to a new judge.

## STANDARD OF REVIEW AND APPLICABLE LAW

"Rule 56(f) allows for further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose. Such motions are broadly favored and should be liberally granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006) (citation omitted). We review the denial of a Rule 56(f) motion for abuse of discretion, *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 (5th Cir. 2006), but "[s]uch motions are broadly favored and should be liberally granted," *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).

We review "a grant of summary judgment *de novo*, applying the same legal standard as the district court." *Miller v. Gorski Wladyslaw Estate*, 547 F.3d 273, 277 (5th Cir. 2008). Summary judgment should be rendered if the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "[A]ll facts and evidence must be taken in the light most favorable to the non-movant." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). In assessing whether summary judgment is appropriate, "we must refrain from making credibility determinations or weighing the evidence." *Aryain v. Wal-*

*Mart Stores Tex. LP*, 534 F.3d 473, 478 (5th Cir. 2008) (quotation marks omitted). We can affirm summary judgment on any ground raised below and supported by the record. *Id.*

An award of sanctions is reviewed for abuse of discretion. *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 566 (5th Cir. 2006). Review is deferential because the district court has the best perspective on the factual circumstances giving rise to the sanctions. *Id.* "A district court abuses its discretion if it imposes sanctions based on (1) an erroneous view of the law or (2) a clearly erroneous assessment of the evidence." *Id.*

Finally, on remand, this court has the authority to have the case assigned to a different judge, but this is an "extraordinary" power that is rarely used. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 581 (5th Cir. 2005) (quotation omitted). There are two tests for whether to exercise this extraordinary power. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 731 (5th Cir. 2003). The first looks at three factors:

> (1) whether the original judge would reasonably be expected to have substantial difficulty putting aside previously expressed views or findings determined to be erroneous, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* The second test looks to whether the facts might reasonably cause an objective observer to question the judge's impartiality. *Id.*

As for the substantive law, trade secret misappropriation in Texas requires "(a) the existence of a trade secret; (b) a breach of a confidential relationship or improper discovery of the trade secret; (c) use of the trade secret; and (d) damages." *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991). It is somewhat unclear that damages is an essential element of a misappropriation of trade secrets claim in Texas. *See, e.g., Phillips*

*v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994) (listing only the first three elements and citing to *Taco Cabana*). Certainly damages need not be shown to get an injunction to protect the trade secret. *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 197 (Tex. App.—Fort Worth 2005, no pet.). "A trade secret is any formula, pattern, device or compilation of information used in one's business, and which gives an opportunity to obtain an advantage over competitors who do not know or use it." *Taco Cabana*, 932 F.2d at 1123. In *Taco Cabana*, this court found that architectural plans and kitchen layout and design drawings could qualify as trade secrets. *Id.* at 1128. Damages in trade secret misappropriation cases are typically a royalty paid to the trade secret owner. *Id.*

In Texas, the elements of a breach of fiduciary duty are: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quotation omitted). An employee may plan to go into competition with his employer, and such preparations will not constitute a breach of fiduciary duty. *Id.* at 284. But an employee "may not appropriate his employer's trade secrets" or "carry away certain information, such as lists of customers." *Id.* (quoting *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 202 (Tex. 2002)). In *Navigant Consulting*, this court viewed the disclosure of detailed business information to competitors, "including revenue projections, backlog estimates, margin rates, [and] descriptions of current and potential engagements," as part of the defendant's breach of fiduciary duty. 508 F.3d at 286. Under Texas law, a defendant who has breached his fiduciary duty must forfeit any profit he has gained from the breach, even if no damage was done to the plaintiff. *See Burrow v. Arce*, 997 S.W.2d 229, 238 (Tex. 1999). The conspiracy and unfair competition claims are derivative of the other claims. *See Schoellkopf v. Pledger*, 778 S.W.2d 897, 900,

904–05 (Tex. App.—Dallas 1989, writ denied) (requiring a finding of some other tort or illegal conduct to find either unfair competition or conspiracy).

## DISCUSSION

### A. Summary Judgment

Cudd argues that "a district court may not grant summary judgment *sua sponte* on grounds not requested by the moving party." *John Deere Co. v. Am. Nat'l Bank*, 809 F.2d 1190, 1192 (5th Cir. 1987). In their motion for summary judgment, the Defendants raised only two issues: (1) whether they used the information taken from Cudd, and (2) whether Cudd has any legally cognizable damages. Their motion did not discuss whether the documents and financial data qualified as trade secrets. Nor did Cudd discuss this issue in its responses, and Cudd was not put on notice that summary judgment could or would be granted on that issue. Yet in its conclusion, the district court found that Cudd could not recover because none of this information qualified as a trade secret. A district court may rule *sua sponte* if it gives a party ten days notice. *See Lozana v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 641 (5th Cir. 2007). But the record here does not indicate any such notice. "Consequently, [Cudd was] not on notice to present arguments on this claim in [its] response to [the Defendants'] summary judgment motion, and the court did not have the benefit of the parties' arguments." *Id*. "Since the district court relied on grounds not advanced by the moving party as a basis for granting summary judgment, and did not give proper notice to [Cudd] before granting judgment on such grounds, its judgment cannot be upheld on appeal." *John Deere*, 809 F.2d at 1192.

We may, however, affirm the grant of summary judgment based on either of the two legal grounds raised by the Defendants below. *See In re Williams*, 298 F.3d 458, 462 (5th Cir. 2002). But because whether the documents constituted trade secrets was not argued below, we assume for purposes of this review that they constitute trade secrets.

The Defendants argue that they made no use of any trade secrets. "Use" refers to "commercial use" and occurs whenever "a person seeks to profit from the use of the secret." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir. 2007) (quotation omitted) (applying Texas law). Use is "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." *Id.* at 451. "Any misappropriation of trade secrets, followed by an exercise of control and domination, is considered a commercial use." *Carbo Ceramics v. Keefe*, 166 F. App'x 714, 721 (5th Cir. 2006) (unpublished) (citing *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 542 (5th Cir. 1974)). Use encompasses using a trade secret to procure financing. *Id.*; *Garth v. Staktek Corp.*, 876 S.W.2d 545, 548 (Tex. App.—Austin 1994, writ dism'd w.o.j.). Roles testified that he showed a Cudd profit and loss statement to investors "to validate [that] what I was telling them was true." He wanted to show them that it was a "good service line to go into." Roles exercised control over Cudd's confidential information to convince investors to finance Great White. He therefore sought to profit from using the confidential information, and so "used" it. In addition, there is evidence that many of the numbers used in the general business plan came directly from Cudd's confidential data. This business plan was circulated to investors and used to secure financing. Khehra stated in his affidavit that MTech used Winters's innovative mini-snubbing unit design (which was designed when Winters was still an employee of Cudd) to build a mini-snubbing unit sold to Cudd. Viewing this evidence in the light most favorable to Cudd, there is at the very least a question of material fact as to whether the Defendants sought to profit from the financial data and mini-snubbing unit design and, therefore, that they used Cudd's confidential information or trade secrets. We cannot affirm the grant of summary judgment on this ground.

The second ground advocated by the Defendants in support of summary judgment is that Cudd has failed to show damages. But Cudd need not be damaged by a breach of fiduciary duty to be entitled to receive the benefits made from such a breach by the Defendants. *See Burrow*, 997 S.W.2d at 238. In assessing damages, Cudd assumed that Great White would never have been formed if Roles had not used its confidential data to create the business plan. Cudd argued for $26.5 million in damages because of the $6 million in bonuses plus the difference between the value of Great White and the money invested. This seems very high, but Cudd was handicapped in determining the benefit to Great White because Cudd was denied the ability to depose all but two of the Defendants, and was not allowed to depose any of the investors to determine the value that the business plan or profit and loss sheet had in their investment decisions. It would be inappropriate to grant summary judgment on damages without allowing further development of the record through discovery. The district court abused its discretion by denying Cudd's Rule 56(f) motion for a continuance to take additional discovery.

## B. Sanctions

The district court's award of sanctions was predicated on the grant of summary judgment and the finding that Cudd's claims lacked merit. Because additional discovery is warranted on Cudd's claims, we vacate the sanctions against Cudd.

## C. Remand

Cudd argues that on remand, we should instruct the district court to assign this case to a different judge. After a careful review of the record, we decline to exercise such an extraordinary power.[2]

---

[2] We also decline to determine *sua sponte* whether the district court has abused its discretion by exercising supplemental jurisdiction over the state law claims. On remand, however, the district court should consider whether to continue exercising such jurisdiction.

## CONCLUSION

For the foregoing reasons, we VACATE the district court's grant of summary judgment and award of sanctions, and REMAND for further proceedings consistent with this opinion. Remand is limited, however, and this panel retains jurisdiction over any further appeals.

---

*See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and *at every stage of the litigation*, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." (emphasis added)). Given that the only federal claim was dismissed early in this litigation, the district court should keep in mind the Supreme Court's instructions that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed [or remanded] as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").