United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 7, 2006**

Charles R. Fulbruge III
Clerk

REVISED JULY 27, 2006

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-10819
_____

SKIDMORE ENERGY, INC.; GEOSCIENCE INTERNATIONAL, INC.;

Plaintiffs-Appellants,

versus

KPMG, Et Al.,

Defendants

MAGHREB PETROLEUM EXPLORATION, SA; MIDEAST FUND FOR MOROCCO,
LTD.; CRAIN, CATON & JAMES, PC; REUVEN M. BISK; SALEH ABDELLAH
KAMEL; ABDELLAH KAMEL; SAMAHA TRADING UK; MOHAMMED BENSLIMANE;
MOULAY ABDELLAH ALAOUI; SHEZI NACKVI; RICHARD MENKIN;
MEDIHOLDING, SA;

Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
--------------------

Before SMITH, WIENER and STEWART, Circuit Judges.

WIENER, Circuit Judge:

Plaintiffs-Appellants Skidmore Energy, Inc. and Geoscience International, Inc. (collectively, "Appellants") appeal the district court's award of sanctions totaling $530,667.32 against them and their trial counsel, Gary Sullivan, under Federal Rule of Civil Procedure 11. The district court apportioned the sanctions three-fourths to Sullivan and one-fourth jointly to Appellants. The subject of this appeal is solely the one-fourth apportioned to

Appellants; Sullivan is not an appellant herein. We conclude that the district court did not abuse its discretion in awarding sanctions or in assessing one-fourth of the award jointly against Appellants; neither do we perceive clear error in the court's determination of Defendants-Appellees' reasonable litigation expenses and attorneys' fees or in using that as the appropriate measure of sanctions. Accordingly, we affirm.

## I. FACTS AND PROCEEDINGS

This lawsuit addresses an ongoing dispute that arose from oil and gas exploration activities in Morocco. One year after they were sued in Morocco for their alleged breach of contract, fraud, and mismanagement of the venture in which they were involved, Appellants filed the instant lawsuit in the Northern District of Texas addressing the same matters already being litigated against Appellants in Morocco. In their Complaint, which named 21 mostly foreign defendants, Appellants claimed damages of $3 billion based on Sherman Act and RICO violations, as well as breach of fiduciary duty, aiding and abetting breach of fiduciary duty, libel, civil conspiracy to suppress oil reserves, and fraud. They alleged inter alia that Defendants were involved in financing terrorist organizations, money laundering, and organized crime. The Complaint was ultimately dismissed in April 2005.

Defendants-Appellees (11 of the 21 defendants) filed a motion in the district court for Rule 11 sanctions in August 2004, asserting that the suit lacked both legal and factual evidentiary

2

support. Two hearings on the motion were conducted in February 2005. The district court heard the testimony of several witnesses, including corporate representatives of both Appellants, and the court itself questioned their counsel, Gary Sullivan. At the conclusion of the hearings, the district court found that Rule 11 violations had indeed been committed and that Defendants-Appellees' reasonable litigation expenses and attorneys' fees were an appropriate sanction. After reviewing detailed submissions from Defendants-Appellees concerning their fees and expenses, the district court entered an Order awarding sanctions totaling $530,667.32. Appellants were jointly assessed one-fourth of this amount; Sullivan was assessed three-fourths. This appeal followed.

## II. STANDARD OF REVIEW

"We review all aspects of the district court's decision to invoke Rule 11 and accompanying sanctions under the abuse of discretion standard."[1] Appellate review is deferential because

> the imposition or denial of sanctions of necessity involves a fact-intensive inquiry into the circumstances surrounding the activity alleged to be a violation of Rule 11. The perspective of a district court is singular. The trial judge is in the best position to review the factual circumstances and render an informed judgment as he is intimately involved with the case, the litigants, and the attorneys on a daily basis.[2]

---

[1] Am. Airlines, Inc. v. Allied Pilots Ass'n, 968 F.2d 523, 529 (5th Cir. 1992).

[2] Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 873 (5th Cir. 1988) (en banc).

3

A district court abuses its discretion if it imposes sanctions based on (1) an erroneous view of the law or (2) a clearly erroneous assessment of the evidence.[3]

"Determinations of hours and rates [for calculating reasonable litigation expenses and attorneys' fees] are questions of fact. ... Accordingly, we review the district court's determination of reasonable hours and reasonable rates for clear error."[4]

### III. ANALYSIS

#### A. Propriety of Sanctions Against Appellants

The district court did not abuse its discretion in awarding sanctions against Appellants. Rule 11 provides for sanctions against "the attorneys, law firms, <u>or parties</u> that have violated [the Rule] or are responsible for the violation."[5] The Advisory Committee notes regarding the 1983 Amendment further make clear that

> If the duty imposed by the rule is violated, the court should have the discretion to impose sanctions on either <u>the attorney, the party</u> the signing attorney represents, <u>or both</u>, ... and the new rule so provides. ... Even though it is the attorney whose signature violates the rule, <u>it may be appropriate under the circumstances of the case to impose a sanction on the client</u>.[6]

---

[3] <u>Smith v. Our Lady of the Lake Hosp., Inc.</u>, 960 F.2d 439, 444 (5th Cir. 1992).

[4] <u>Louisiana Power & Light Co. v. Kellstrom</u>, 50 F.3d 319, 324 (5th Cir. 1995) (citation omitted).

[5] FED. R. CIV. P. 11(c) (emphasis added).

[6] FED. R. CIV. P. 11 Advisory Committee Notes (emphasis added).

4

We have previously approved sanctions against a client as well as his attorney, because both have a duty "to conduct a reasonable inquiry into the facts or law before filing the lawsuit."[7]

1. No Sanctioning of Clients for <u>Legally</u> Frivolous Pleading

Although a represented party may be held responsible for a pleading that violates Rule 11, the 1993 Amendment to the Rule specifically provides that "[m]onetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)" concerning legally frivolous pleadings, which are peculiarly within the province of lawyers.[8] Appellants thus argue that the district court abused its discretion in sanctioning them for filing a legally frivolous pleading, for which only their lawyer could properly be sanctioned. They further assert that the district court made no specific findings that they had knowingly participated in sanctionable conduct.[9] Although this last point is

---

[7] <u>Jennings v. Joshua Indep. Sch. Dist.</u>, 948 F.2d 194, 197 (5th Cir. 1991).

[8] FED. R. CIV. P. 11(c)(2)(A); <u>Bynum v. Am. Airlines</u>, No. 04-20921 (5th Cir. Feb. 6, 2006) (unpublished) ("monetary sanctions can be imposed against the attorney but <u>not</u> the client for violations of Rule 11(b)(2)"). Under subdivision (b)(2) the person presenting the pleading certifies that "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." FED. R. CIV. P. 11(b)(2).

[9] <u>See</u> <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1117-18 (11th Cir. 2001) (discussing liability of client for "knowing participation" in sanctionable conduct, misrepresenting facts, or for being the "mastermind" behind a frivolous case).

perhaps debatable,[10] the district court would have abused its discretion if it had sanctioned Appellants for violating Rule 11(b)(2) by filing a <u>legally</u> frivolous pleading.

2. Sanctions for <u>Factually</u> Frivolous Pleading

The district court did not, however, sanction Appellants for the <u>legally</u> frivolous nature of their pleading: It sanctioned them for the numerous <u>factually</u> groundless allegations in their Complaint, for which clients may properly be sanctioned.[11] The district court observed the "common thread weaving its way through this case ... is the puzzling lack of legal <u>or factual</u> support articulated for the pleadings," and repeatedly noted "Plaintiffs' failure to articulate any evidentiary support for their claims." The court discussed in detail the testimony of Michael Gustin,

---

[10] In its Orders of March 17 and May 18, 2005, the district court agreed with Defendants-Appellees that Appellants had "taken a commercial legal dispute in Morocco between well-defined parties and used it as a vehicle to harass and embarrass them by suing numerous individuals with little or no connection to the dispute and publicly accusing them in the suit of unfounded sensational wrongdoing," and that they exhibited a "reckless willingness to impose the burden of unwarranted litigation upon others," thereby knowingly participating in conduct violative of Rule 11(b)(1) (improper purpose). The court described Appellants as "active participants." Also, the record contains a March 2004 letter from Sullivan to Michael Gustin, Skidmore's owner, acknowledging the aggressive legal positions they were advancing, the possibility of sanctions, and stating that "part of this reason for our lawsuit was to act as a counteroffensive to the lawsuit ... in Morocco."

[11] <u>See</u> FED. R. CIV. P. 11(b)(3) (factual evidentiary support); <u>see also</u> <u>Byrne</u>, 261 F.3d at 1118.

6

Skidmore's owner,[12] who assured the court that he had reviewed the pleadings before they were filed. Nevertheless, the district court found, he was "entirely unable to articulate a factual nexus between any of the Defendants and verifiable money laundering activity," organized crime, terrorism financing, or any of the other "sensational allegations peppered throughout the complaint and RCS." The court found "[t]he bulk of Plaintiff[s'] causes of action ... are without evidentiary support and thus appear to have been instigated as a gamble that something might come of it rather than on the basis of the facts at hand." The court awarded sanctions because it found "that reasonable <u>factual</u> and legal inquiries would have prevented this suit from being filed."

Moreover, adhering to the distinction between factual and legal grounds for sanctions, the district court "fully considered Sullivan's missteps when apportioning [the] fee award such that Plaintiffs bear responsibility for twenty-five percent of the award and Sullivan seventy-five percent." The district court did not abuse its discretion in awarding sanctions against Appellants based

---

[12] We acknowledge the argument of Appellants' counsel that only Skidmore's — and not Geoscience's — involvement in sanctionable conduct is reflected in the Record. We also observe, however, that these two entities were represented by common counsel in the district court, as they are on appeal, and that in all of their filings no distinction is made between them. We cannot say, particularly in light of the district court's inherently superior vantage point, that the court erred in sanctioning Appellants jointly.

on the lack of support for the factual allegations in their pleading.

B. Quantum of Sanctions Award

Rule 11 expressly provides that when there is a violation of the Rule, an appropriate sanction is "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."[13] The district court entered its Sanctions Order following two hearings in which it heard the testimony of several witnesses and questioned Appellants' trial counsel extensively, and following a review of documentation supporting Defendants-Appellees' claims for fees and expenses.

1. Calculation of Reasonable Litigation Expenses and Attorneys' Fees

The district court's calculation of reasonable fees and expenses was not clearly erroneous. The court conducted the lodestar analysis by multiplying the reasonable number of hours expended in defending the suit by the reasonable hourly rates for the participating lawyers.[14] As the hourly rates submitted by the defense were not disputed,[15] the sole factor for the court's determination was the reasonable number of hours expended. Relying

[13] FED. R. CIV. P. 11(c)(2).

[14] See Kellstrom, 50 F.3d at 324.

[15] The district court also determined that "[t]he Defendants' attorneys' hourly fees ... appear to be comparable fees for representation of similar quality in this area."

8

on defense counsel's documentation, which "clearly indicate[d] the nature and type of work performed or [sic] and detail[ed] how the hours were spent on particular aspects of the case," the court concluded that the number of hours claimed by the defense was reasonable. Among the court's considerations were the complexity of the litigation, the number of individual and mostly foreign defendants, and the "vast array of claims asserted." Given the district court's "intimate[] involve[ment] with the case, the litigants, and the attorneys,"[16] as well as its thorough discussion in its Order granting the sanctions, its factual determination of the reasonable number of hours expended was not clearly erroneous.[17]

2. Fees Unrelated to Sanctionable Conduct

Appellants complain, vaguely and conclusionally, that a "significant portion" of the defense costs awarded were unrelated to the sanctionable conduct or were incurred in representing defendants other than the 11 that moved for sanctions. Beyond these bare assertions, however, Appellants failed adequately to brief the issue or to call our attention to anything in the record that might support this contention. There is no readily apparent indication that the district court's assessment of the evidence concerning fees and expenses was clearly erroneous. In fact, the

---

[16] Thomas, 836 F.2d at 873.

[17] In assessing the overall reasonableness of the defense costs, we note, as the district court observed, that the plaintiffs' own costs were nearly $100,000 greater.

district court concluded that all of the defense costs arose from the sanctionable conduct because otherwise the lawsuit would never have been filed at all.[18]

3. "Snapshot" Test

Appellants argue that the district court impermissibly awarded sanctions based on conduct after the sanctionable pleading was signed, thereby imposing a continuing obligation on their trial counsel to reevaluate the merits of the case as it developed. They cite our en banc decision in Thomas v. Capital Security Services, Inc. for its "snapshot" test: "Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken — when the signature is placed on the document."[19] Therefore, "in considering the nature and severity of the sanction to be imposed under Rule 11, the court should consider the state of mind of the attorney when the pleading or other paper was signed."[20]

Appellants' contention is meritless, as the district court's Order of March 17, 2005, which the Appellants themselves quote at length in their brief, makes clear:

---

[18] In its Order of March 17, 2005, the court stated that "because the Court further finds that reasonable factual and legal inquiries would have prevented this suit from being filed against these eleven defendants, the Defendants are awarded all of their reasonable attorneys' fees they expended in defending this suit."

[19] 836 F.2d at 874.

[20] Id. at 875 (quotation omitted).

10

> After reading all of his filings and exhibits, hearing from his witnesses, and vigorously questioning him at both hearings, it appears that, <u>at the time Sullivan filed his complaint</u> and RCS and continuing through the February 28, 2005 evidentiary hearing, he had no evidentiary support for the factual allegations underlying his causes of action and no "good reason to believe" that the facts he alleged were likely to have evidentiary support.

Appellants, in their quotation of the same passage, place emphasis on the phrase, "and continuing through the February 28, 2005 evidentiary hearing," as evidence that the district court did not focus solely on the instant the Complaint was signed.

This argument misses the point of the <u>Thomas</u> "snapshot" test. Prior to that decision, attorneys in this Circuit had a continuing obligation to review and reevaluate their positions as the litigation developed; a document that initially satisfied Rule 11 might later become the basis for sanctions if new facts were discovered or circumstances changed such that there was no longer a good faith basis for the earlier filing.[21] <u>Thomas</u>'s "snapshot" rule ensures that Rule 11 liability is assessed only for a violation existing at the moment of filing. Although the district court's Order mentions the time between the filing of the complaint and the evidentiary hearing, the court clearly concluded that Sullivan's filing never satisfied Rule 11 to begin with — that is, at the time of filing — and the fact that he still had no

---

[21] See <u>Childs v. State Farm Mut. Auto. Ins. Co.</u>, 29 F.3d 1018, 1024 n.18 (5th Cir. 1994) (discussing <u>Thomas</u>).

11

evidentiary support by the time of the hearing only underscores the violation.

## 4. Advance Warning for "Obviously Defective" Pleading

The en banc court in Thomas instructed that "where a complaint or other paper is obviously defective within the context of Rule 11, ... a court should at minimum notify the individual certifying the document that Rule 11 sanctions will be assessed at the end of trial if appropriate."[22]  Appellants seize on this language to insist that the district court's failure to warn their trial counsel was an abuse of discretion.[23]  We have previously rejected this contention, stating flatly that "Thomas did not establish a rule that district courts, in all instances, must give the offending party notice of a Rule 11 violation before applying sanctions."[24]  The district court was thus not required to save Appellants from themselves or their attorney.

## IV. CONCLUSION

The district court did not abuse its discretion in awarding Defendants-Appellees their reasonable attorneys' fees and expenses as Rule 11 sanctions for the filing of this wholly frivolous lawsuit.  This sanction was imposed for both the legally frivolous

---

[22] 836 F.2d at 881.

[23] Appellants' own characterization of their Complaint as "obviously defective" necessarily precludes any argument on appeal that their filing was not sanctionable.

[24] Harmony Drilling Co. v. Kreutter, 846 F.2d 17, 19 (5th Cir. 1988).

12

nature of the suit and the obvious lack of evidentiary support for the sensational allegations in the Complaint; and liability for the sanctions award was appropriately apportioned between Appellants and their trial counsel. Thus, the district court did not abuse its discretion in awarding or apportioning sanctions and did not commit clear error in its determination of the reasonable litigation expenses and attorneys' fees occasioned by the frivolous filing. The district court's Order is, in all respects, AFFIRMED.