IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 16, 2008

Charles R. Fulbruge III
Clerk

No. 08-20012
Summary Calendar

SARAH WORRELL

Plaintiff - Appellant

V.

HOUSTON CAN! ACADEMY; GREATSCHOOLS, INC; AMERICA CAN!

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:07-CV-1100

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Melvin Houston, Sarah Worrell's attorney, and his law firm, Melvin Houston & Associates, P.C., appeal the district court's grant of GreatSchools, Inc.'s ("GreatSchools") motion for sanctions against them under Federal Rule of Civil Procedure 11. For the following reasons, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

On April 3, 2007, Houston signed and filed a complaint on Worrell's behalf, alleging several employment discrimination claims under Title VII of the Civil Rights Act of 1964, against Houston Can! Academy ("HCA") and GreatSchools. The complaint alleged that GreatSchools "regularly conducts business in the State of Texas," and "was at all relevant times an employer within the meaning of Title VII." It also alleged that GreatSchools's founder and president, William Jackson, is "the registered agent" of HCA and that GreatSchools shared an address with HCA.

HCA, a charter school, was Worrell's actual employer. GreatSchools, however, has not regularly conducted business in Texas, has never employed Worrell, and has never had any involvement with Worrell's employment with HCA. Jackson has never been HCA's registered agent, and GreatSchools has never shared an address with HCA. Rather, GreatSchools is a small non-profit corporation that has its principal place of business in California and that operates an informational website designed to assist parents of school-age children by providing a searchable database containing information on approximately 115,000 public, private, and charter schools across the United States. As stated on its website, GreatSchools does not own, operate, or manage any school, and it has no legal relationship to any school that is listed on its website, including HCA.

After being named as a defendant, GreatSchools's counsel, Oswald Cousins, placed numerous telephone calls and sent several letters, over a period of nearly three months (May 15, 2007 to August 9, 2007), to Houston and Marie Jamison, a second-year associate who worked for Houston at that time, to inform them that GreatSchools had no legal connection to HCA and to request that

GreatSchools be dismissed from the suit. During that period, GreatSchools provided Houston and Jamison with documentary evidence substantiating its contentions that it had no connection to HCA and was not a proper defendant, including: (1) its articles of incorporation and by-laws, stating that it is a California non-profit public benefit corporation and that its objective is to publish information on schools; (2) excerpts from GreatSchools's website, explaining its activities and mission of providing information on schools and specifically disclaiming any affiliation with the schools listed on the site; and (3) identification of the website of the entity that controls HCA, Texas Can!, which also indicates that HCA has no connection to GreatSchools. After submitting this information, GreatSchools asked Houston to provide the information upon which he based GreatSchools's inclusion in this lawsuit, but Houston never responded. On July 31, 2007, Cousins spoke to Jamison, and she stated that Houston refused to dismiss GreatSchools, notwithstanding the foregoing information. When Cousins inquired about this decision, she responded only that an attorney for HCA—whose name she could not remember—had provided information during an Equal Employment Opportunity Commission ("EEOC") mediation that GreatSchools was somehow connected to HCA. On August 9, 2007, Cousins sent another letter to Houston warning that he was risking sanctions under Rule 11 for filing a meritless complaint with numerous factual inaccuracies against GreatSchools, and that GreatSchools was going to file a motion to dismiss. Houston again did not respond.

On August 17, 2007, GreatSchools filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), citing GreatSchools's lack of connection to Texas, HCA, or Worrell. On this same day, GreatSchools served

Houston with a motion for sanctions under Rule 11, as indicated by its declaration of service. Houston, however, took no action in response to this motion. On September 11, 2007, after Rule 11's safe harbor period of twenty-one days had passed, GreatSchools filed its motion for sanctions with the court. In this motion, GreatSchools argued that the factual claims and legal contentions related to it in the complaint were inaccurate, had been presented to the court without a reasonable pre-filing investigation, and lacked evidentiary support. More specifically, GreatSchools asserted that Houston (1) did not check any public records to determine whether there was any legal connection between GreatSchools and HCA; (2) alleged without any basis that HCA has the same address as GreatSchools; (3) alleged without any basis that Jackson is the registered agent for HCA; (4) ignored ample evidence from Cousins confirming that there is no connection between HCA and GreatSchools; (5) filed a Title VII complaint against GreatSchools even though they knew that Worrell never attempted to exhaust administrative remedies against GreatSchools; and (6) attempted to justify the inclusion of GreatSchools by improperly disclosing what was allegedly said during a confidential EEOC mediation that involved only HCA. GreatSchools provided a sworn declaration from Cousins, stating that he billed at an hourly rate of $560.00 and spent at least twelve hours in attempting to obtain a dismissal of GreatSchools through repeatedly contacting Houston and Jamison by telephone and mail and then drafting a motion to dismiss, a motion for sanctions, and accompanying briefing. GreatSchools thus requested $6,720.00 in attorney's fees as sanctions against Houston and his law firm. Houston filed no opposition to GreatSchools's motion to dismiss or motion for sanctions.

On October 19, 2007, the district court held the initial pretrial and scheduling conference, where it considered GreatSchools's two pending motions.[1] The district court first granted GreatSchools's motion to dismiss, noting that both parties agreed that GreatSchools was not a proper defendant.[2] The district court then heard arguments on GreatSchools's motion for sanctions. At the outset, Houston noted that he "did not respond to these pending motions" because Jamison had left his firm on September 1, 2007 and he was "just getting [his] feet under the case." Houston then went on to admit that he undertook no investigation of his own regarding GreatSchools's inclusion in this lawsuit and stated that he relied solely on Jamison's "reasonable" investigation. Houston stated that Jamison reasonably concluded that GreatSchools was the parent organization of HCA based on information contained on GreatSchools's website, but he cited no evidence for this contention. Houston also interestingly asserted that it was GreatSchools's duty to investigate and provide the name of HCA's registered agent. GreatSchools reiterated the arguments made in its motion and asserted that no evidence demonstrated any legal connection between it and HCA. The district court took the motion under advisement. On November 28, 2007, the district court granted the motion for sanctions, finding that Houston improperly signed the complaint naming GreatSchools as a defendant, because

---

[1] The order relating to this conference, which both parties received, expressly stated that the court "may rule on any pending motions at the conference." Moreover, Southern District of Texas Local Rule 16.1 states that the initial pretrial conference is conducted in accordance with Federal Rule of Civil Procedure 16. That rule expressly provides that the district court may consider and act upon any pending motions during the conference. FED. R. CIV. P. 16(c)(2)(K).

[2] Houston noted that he agreed to the dismissal of GreatSchools based upon a letter he had received from HCA that morning stating that it had no connection to GreatSchools.

he had failed to conduct a reasonable pre-filing investigation and subsequently refused to dismiss GreatSchools even when presented with sufficient information that GreatSchools was not affiliated with HCA. The district court also explained that it was Houston's duty to determine who was the registered agent for HCA and that such an investigation should have occurred before filing suit. Based upon Houston's "egregious conduct" in violating Rule 11, the district court assessed $6,000.00 in attorney's fees as sanctions against Houston and his law firm.

On December 10, 2007, Houston filed a motion to alter or amend that judgment under Federal Rule of Civil Procedure 59(e). For the first time, Houston argued that he had not received proper notice of the hearing on the motion for sanctions and that the procedural requirements of Rule 11 were not satisfied. Houston further argued that Jamison's pre-filing investigation was reasonable—this time submitting affidavits from him and Jamison—and that the amount of the sanctions award was "wholly inappropriate." On January 2, 2008, the district court denied Houston's motion, finding that he had not demonstrated any manifest error of fact or law or offered any newly discovered evidence that warranted reconsideration. The district court stated that "[t]o the contrary, . . . Houston is attempting to make arguments or offer evidence that he could have made long before in connection with GreatSchools's motion for sanctions." Houston appeals.

## II. STANDARD OF REVIEW

"We review all aspects of the district court's decision to invoke Rule 11 and accompanying sanctions under the abuse of discretion standard." Am. Airlines,

Inc. v. Allied Pilots Ass'n, 968 F.2d 523, 529 (5th Cir. 1992); Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 872 (5th Cir. 1988) (en banc) (holding that the abuse of discretion standard applies "across-the-board to all issues in Rule 11 cases"). This court has noted that this standard is "necessarily very deferential" for two reasons:

> First, based on its familiarity with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11.

> Second, the district judge is independently responsible for maintaining the integrity of judicial proceedings in his court and, concomitantly, must be accorded the necessary authority.

Whitehead v. Food Max of Miss., Inc., 332 F.3d 796, 802–03 (5th Cir. 2003) (en banc) (internal quotations, citations, and alterations omitted). "A district court abuses its discretion if it imposes sanctions based on (1) an erroneous view of the law or (2) a clearly erroneous assessment of the evidence." Skidmore Energy, Inc. v. KPMG, 455 F.3d 564, 566 (5th Cir.), cert. denied, 127 S. Ct. 524 (2006). "Generally, an abuse of discretion only occurs when no reasonable person could take the view adopted by the trial court." Whitehead, 332 F.3d at 803 (internal quotations omitted).

## III. DISCUSSION

Houston argues that the district court abused its discretion by (1) granting GreatSchools's motion for sanctions, (2) assessing $6,000.00 in attorney's fees as sanctions against Houston and his law firm, and (3) denying Houston's motion to alter or amend the judgment imposing sanctions. Houston's arguments are entirely without merit, and we address each below.

A.    Motion for Sanctions

(1) Award of Sanctions

Rule 11 provides for sanctions against "any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1). This rule is "aimed at curbing abuses of the judicial system," Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 397 (1990), and is designed "to reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of attorneys and reinforcing those obligations through the imposition of sanctions," Thomas, 836 F.2d at 870. Along those lines, attorneys are required to sign "[e]very pleading, written motion, and other paper" and must certify to the best of their knowledge—formed after an inquiry reasonable under the circumstances—that allegations and other factual contentions submitted to the court have evidentiary support. See FED. R. CIV. P. 11(a), (b)(3); Jenkins v. Methodist Hosps. of Dallas, Inc., 478 F.3d 255, 263–64 (5th Cir.), cert. denied, 128 S. Ct. 181 (2007); see also Skidmore, 455 F.3d at 567 (stating that an attorney has a duty "to conduct a reasonable inquiry into the facts or law before filing the lawsuit" (internal quotations omitted)). These obligations are "personal[ and] nondelegable," Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120, 126 (1989), and they "must be satisfied; [a] violation . . . justifies sanctions." Whitehead, 332 F.3d at 802. In determining compliance with Rule 11, "the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances." Id. (internal quotations omitted). "The reasonableness of the conduct involved is to be viewed at the time counsel . . . signed the document alleged to be the basis for the Rule 11 violation." Jennings v. Joshua Indep. Sch. Dist., 948 F.2d 194, 197 (5th Cir. 1991).

Based upon the evidence before it, the district court did not abuse its discretion in sanctioning Houston and his law firm for failing to conduct a reasonable pre-filing investigation to determine whether GreatSchools was a proper defendant as Worrell's employer, and for signing and filing the complaint against GreatSchools with numerous incorrect factual allegations. Notably, Houston never filed a response to GreatSchools's motions, which he acknowledged at the October 17, 2007 hearing. Houston also admitted that he did not conduct any investigation of his own to determine if GreatSchools was affiliated with HCA. Houston asserted only that he relied upon Jamison's "reasonable" investigation. The evidence, however, reveals that Jamison's pre-filing investigation, and Houston's reliance upon it in signing the complaint, was far from reasonable. Jamison's extremely limited research included searching for HCA on (1) the Texas Secretary of State's website, which did not yield any results; and (2) the internet, where she discovered that GreatSchools's website listed information on HCA. Based upon this information alone, Jamison concluded that HCA was the parent organization of GreatSchools and Houston relied upon it in including GreatSchools as a defendant. GreatSchools, however, listed HCA on its website, because the site provides a searchable database to parents that contains information on approximately 115,000 schools nationwide. More importantly, GreatSchools expressly disclaims on its website any formal affiliation or legal connection to any school listed in its database. Houston failed to present any evidence to the contrary—indeed, there was no affirmative evidence linking GreatSchools to HCA—or to cite any other research done by him or Jamison before filing suit against GreatSchools. Nor is there any evidence that Worrell told Jamison or Houston that HCA had any connection to GreatSchools or that Worrell's EEOC proceedings involved GreatSchools.

9

Nevertheless, Houston signed the complaint, which contained numerous unsupported and factually incorrect allegations regarding GreatSchools, and filed it with the court. Like the district court, we hold, under an objective standard, that these facts indicate a "complete failure to conduct a reasonable investigation before suing GreatSchools." Because Houston clearly violated Rule 11, we hold that the district court did not abuse its discretion in assessing sanctions against him and his law firm.

(2) Quantum of Sanctions Award

Rule 11 provides:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

FED R. CIV. P. 11(c)(4). District courts are given considerable discretion in determining the appropriate sanction to impose on a party that violates Rule 11. See Thomas, 836 F.2d at 876–77. "District courts may choose to deter individuals who violate Rule 11 with monetary sanctions. One benefit of monetary sanctions is that they may be imposed exclusively against the attorney, thereby avoiding punishment of the client for attorney misconduct." Id. at 877. Nevertheless, while monetary sanctions may be appropriate under Rule 11, this court stated that the "basic principle governing the choice of sanctions is that the least severe sanction adequate to serve the purpose [of Rule 11] should be imposed." Id. at 877–78. Thus, "as a less severe alternative to

10

monetary sanctions, district courts may choose to admonish or reprimand attorneys who violate Rule 11." Id. at 878.

Houston argues that the district court abused its discretion in assessing $6,000.00 in attorney's fees as sanctions against Houston and his law firm. Houston first asserts that a monetary sanction to reimburse GreatSchools for their attorney's fees is "wholly inappropriate." Houston argues that the district court should have instead admonished or reprimanded him as a less severe sanction. However, Rule 11(c)(4) expressly provides for an award of attorney's fees directly resulting from a violation of the rule. Furthermore, given Houston's conduct—in both signing the complaint based upon an unreasonable pre-filing investigation and then disregarding overwhelming evidence presented by GreatSchools that it had no connection to HCA, causing more work to be done by Cousins—and the district court's necessarily broad discretion in choosing an appropriate sanction, the district court did not err in imposing a monetary sanction, in the form of attorney's fees, against Houston and his law firm. Such a sanction, as the district court explained, is needed to serve the purpose of Rule 11 in deterring repetition of similar conduct by Houston in the future.

Additionally, Houston argues that the amount of the sanction was unreasonable and not related to the expenses of GreatSchools. This strained argument, however, lacks merit. GreatSchools provided a sworn declaration from Cousins, which stated that he (1) was a partner at Orrick, Herrington & Sutcliffe, LLP in San Francisco, California with fourteen years of legal experience and ten years of specialized employment law experience; (2) billed at an hourly rate of $560.00; and (3) spent at least twelve hours in obtaining the dismissal of GreatSchools, through making numerous telephone calls, writing several letters, and drafting a motion to dismiss, a motion for sanctions, and

accompanying briefing because of Houston's dereliction. Houston did not dispute any of Cousins's contentions, in briefing or at the October 17, 2007 hearing. Given this undisputed information, the district court properly conducted the lodestar analysis by multiplying the reasonable number of hours expended in defending the suit—which it determined to be twelve based upon Cousins's sworn declaration—by the reasonable hourly rate for the participating attorney—which it actually adjusted from $560.00 to $500.00 to reflect the market in the district—in calculating GreatSchools's reasonable attorney's fees to be $6,000.00. See La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 323–24 (5th Cir. 1995) (per curiam). The district court did not clearly err in making this calculation, because it relied on Cousins's undisputed sworn declaration, as well as the significant amount of work that Cousins had to perform in obtaining dismissal of GreatSchools given Houston's conduct. See Skidmore, 455 F.3d at 566 (stating that, when this court reviews the imposition of monetary sanctions, "[d]eterminations of hours and rates [for calculating reasonable litigation expenses and attorneys' fees] are questions of fact" reviewed for clear error (internal quotations omitted)). Thus, we hold that the district court did not abuse its discretion in assessing $6,000 in attorney's fees—which was only a portion of the fees requested—as sanctions against Houston and his law firm.

B.    Motion to Alter or Amend Judgment

Rule 59(e) allows motions to alter or amend judgment filed within ten days of the judgment. This motion "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."

Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989) (internal quotations omitted). "This court has indicated[, however,] that a civil litigant may not use Rule 59(e) to raise new claims that could have been raised prior to the district court's entry of a final judgment." United States v. Dupre, 247 F.3d 241, 2001 WL 43554, at *1 (5th Cir. Jan. 9, 2001) (per curiam) (unpublished); see also Michael Linet, Inc. v. Vill. of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005) (stating that a party may not use "a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment").

Houston's Rule 59(e) motion was nothing more than a belated effort to offer evidence and make arguments that he could have raised before the due date for his response to the motion for sanctions, before the October 17, 2007 hearing, and during that hearing. In that post-judgment motion, Houston, for the first time, argued that he did not receive the motion for sanctions, that he did not have proper notice that the motion for sanctions would be discussed at the initial pretrial and scheduling conference, and that the procedural requirements of Rule 11 were not satisfied. Because Houston did not raise those arguments in briefing or at the hearing, when he had ample opportunity to do so, we need not consider them here. Regardless, the record clearly contradicts Houston's arguments and demonstrates that they have no merit.[3] Houston also

---

[3] Houston's arguments fail to indicate any manifest error of fact or law. First, GreatSchools filed its motion for sanctions electronically on September 11, 2007, and the record indicates that it was served automatically on Houston the same day pursuant to Southern District of Texas Local Rule 7.4. Moreover, Houston discussed GreatSchools's motion for sanctions at the October 17, 2007 hearing and indicated that he knew about them. Second, Houston had notice that the motion for sanctions could be considered at the initial pretrial conference, because the order setting the date for the conference expressly stated that the district court "may rule on any pending motions at the conference." This order is consistent

attempted to submit evidence in the form of affidavits from him and Jamison to support new arguments regarding the reasonableness of the pre-filing investigation. Houston, however, failed to identify any newly discovered evidence that could not have been presented in briefing or at the hearing. Accordingly, we hold that the district court did not abuse its discretion in denying Houston's Rule 59(e) motion.

## IV. CONCLUSION

The district court did not abuse its discretion in granting GreatSchool's Rule 11 motion for sanctions against Houston and his law firm or in denying Houston's Rule 59(e) motion to alter or amend judgment. For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

with Local Rule 16.1 and Federal Rule of Civil Procedure 16(c)(2)(K). Third, the procedural requirements of Rule 11 have been satisfied. Rule 11 requires that a motion for sanctions be filed separately and served on the nonmoving party at least twenty-one days before it is filed with the court. See FED. R. CIV. P. 11(c)(2). The record reveals that GreatSchools served its motion on Houston on August 17, 2007 and more than twenty-one days had passed when GreatSchools filed it with the court on September 11, 2007, after no action was taken by Houston in response to the motion.