# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 22, 2011

Lyle W. Cayce
Clerk

No. 09-20759

YOLANDA S. HOLDEN,

Plaintiff-Appellant,

v.

ILLINOIS TOOL WORKS INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-2783

Before JONES, Chief Judge, and JOLLY and GARZA, Circuit Judges.

PER CURIAM:[*]

This appeal relates to Yolanda S. Holden's repeated attempts to sue Valeron Strength Films Co., a division of Illinois Tool Works Inc. Holden appeals the district court's orders, which denied remanding the case to state court, imposed monetary sanctions, and dismissed Holden's case with prejudice. We AFFIRM the district court for reasons discussed below.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-20759

I

In 2006, Holden, a former machinist for Illinois Tool Works ("ITW"), sued ITW and Valeron Strength Films Co. ("Valeron") in federal court alleging sexual harassment, sexual discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e, *et seq.* Soon after, ITW repeatedly informed Holden that Valeron was not a legal entity capable of being sued.[1] Eventually, Melvin Houston, Holden's counsel, signed a letter in which he agreed, on Holden's behalf, to dismiss Valeron as a defendant. The district court dismissed Valeron from the lawsuit, which proceeded to trial before a jury. The jury found in favor of ITW and the trial court taxed costs against Holden, ordering her to pay $5,979.29. Holden has yet to pay these costs.

Shortly after her first case ended, Holden sued ITW and Valeron again. This time, she alleged various claims of sexual harassment and sexual discrimination under Texas law and Holden proceeded with her lawsuit in Texas state court. ITW removed the lawsuit to district court on the basis of diversity jurisdiction,[2] and argued that Valeron, the non-diverse defendant, was fraudulently joined. Holden moved to remand the case, arguing that Valeron was a proper party. The district court disagreed and denied the remand motion, concluding that Valeron was not a legal entity capable of being sued. ITW moved for sanctions against Holden and Houston due to their decision to sue Valeron despite the proceedings in the first lawsuit. The district court partially granted ITW's request, limiting the sanctions to $3,843.80, the attorneys' fees

---

[1] ITW explained to Holden that Valeron was only a division of ITW and could not be sued or served in its Answer, responses to Holden's interrogatories, and Motion for Summary Judgment.

[2] ITW is a diverse defendant because it is incorporated in Delaware and its principal place of business is in Illinois.

No. 09-20759

ITW incurred while removing the case to federal court and responding to Holden's remand motion.

After the district court ordered sanctions against Holden and Houston, ITW moved to stay the case because Holden had failed to pay costs from her first lawsuit. The district court ordered Holden to pay the costs and sanctions by September 30, 2009, or face dismissal of the case with prejudice. Holden declined to comply and, instead, moved for the court to reconsider its previous orders. The court denied Holden's reconsideration motion. The court dismissed the case with prejudice when Holden did not pay the costs or sanctions by September 30, 2009. Holden appealed to us.

## II

## A

Holden argues that the trial court erred by denying her motion for remand, issuing sanctions, and dismissing her second lawsuit. We begin by considering whether the district court erred by declining to remand Holden's case to Texas state court.[3]

Under 28 U.S.C. § 1441(a), a party may remove to federal court any civil action initially filed in State court "of which the district courts of the United States have original jurisdiction." Removal is permitted when a lawsuit centers on a question of federal law or if a claim based on State law does not involve defendants who are citizens of "the State in which such action is brought." 28 U.S.C. § 1441(b). A defendant seeking removal of a case based on diversity jurisdiction must demonstrate that the lawsuit satisfies the requirements

---

[3] Typically, we do not have jurisdiction to consider a district court's remand order because "in and of itself" it is not a final judgment. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. 1981). In this case, however, the district court's dismissal of Holden's case constitutes an appealable final decision and under 28 U.S.C. § 1291, permits for our consideration of that court's earlier decision as to remand. *Id.* at 548.

outlined in 28 U.S.C. § 1332.[4]    A district court is "prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been *improperly* or *collusively* joined to manufacture federal diversity jurisdiction." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).    Remand due to improper joinder may occur when a party has committed outright fraud in pleading jurisdictional facts or the plaintiff is reasonably unable to establish "'a cause of action against the non-diverse party in state court.'" *Id*. at 573 (*quoting Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).    The latter type of improper joinder is often referred to as "fraudulent joinder," *Smallwood*, 385 F.3d at 573, but it does not require proof that the plaintiff intended to deceive the court.    *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).

In this case, the district court's remand decision hinged on whether Holden had established a valid claim against Valeron, a non-diverse defendant that would destroy diversity jurisdiction.    To decide whether a plaintiff has a reasonable basis for recovery under state law, a district court may "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against" an in-state defendant. *Smallwood*, 385 F.3d at 573.    Alternatively, a district court may "pierce the pleadings and conduct a summary inquiry" if a plaintiff's claim misstates or omits specific facts that would determine whether joinder was proper. *Id*.    This inquiry is appropriate "only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*. at 573–74.

Holden argues that the district court erred by examining the record when that court considered whether Valeron was fraudulently joined.    We have,

---

[4] Section 1332, in pertinent part, requires for diversity jurisdiction a matter in controversy that exceeds $75,000, which is between citizens of different States.

however, repeatedly held that a district court may examine the record to determine whether a reasonable basis exists for predicting that state law might impose liability on a defendant who alleges fraudulent joinder. *Smallwood*, 385 F.3d at 573–75.; *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815–16 (5th Cir. 1993); *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 263 (5th Cir. 1995); *B., Inc.*, 663 F.2d at 549. Holden relies on *Cavallini* to argue that a district court may only examine documents that existed in the record when a party filed for removal. But *Cavallini* does not stand for that proposition. *See* 44 F.3d at 264–65. Rather, in *Cavallini* we upheld the district court's decision not to consider a complaint amended after a case was removed to federal court. *Id*. Here, the district court was free to consider evidence in the record as part of a summary inquiry into whether a defendant was improperly joined in an attempt to defeat diversity jurisdiction.

Holden also argues that there is no proof of fraud in the record and that ITW failed to prove there was no reasonable possibility that Holden could establish a cause of action against Valeron in Texas state court. As we explained in *Smallwood,* 385 F.3d at 573–75*,* and *Jernigan*, 989 F.2d at 815–16, an inquiry into allegations of fraudulent joinder considers whether a plaintiff has any possibility of recovery against an in-state defendant. Contrary to Holden's assertion, under this standard, proof of actual fraud is unnecessary. *See Poulos*, 959 F.2d at 73. The trial court examined the record and concluded that ITW had repeatedly demonstrated that Valeron was a division of ITW and therefore, was not a separate legal entity that could be sued or served. Among other pieces of evidence, the district court relied on a letter ITW sent to Houston during the first lawsuit. In the correspondence, ITW explained that Valeron was "not a legal entity capable of being sued" and asked Houston to voluntarily dismiss Valeron from the previous lawsuit. Houston signed the letter on Holden's behalf, agreeing to dismissal. On appeal, Holden argues that because

No. 09-20759

the letter lacked attachments, the correspondence could not serve as proof of Valeron's inability to be sued. This argument is erroneous. The letter adequately demonstrated that ITW had notified Holden and Houston of this fact.

The district court's conclusion of improper joinder is strengthened by that court's reliance on several additional pieces of evidence. For example, the trial court considered Holden's W2 forms, which showed that her employer was ITW, not Valeron. Additionally, ITW supplied the trial court with filings from the Texas Secretary of State that showed Valeron's certificate of limited partnership was cancelled in 2002 and that no other business filings for Valeron existed. This evidence clearly established that ITW, not Valeron, had employed Holden and that Valeron could not be sued.[5] Therefore, the district court did not err by concluding that Valeron was fraudulently joined because a valid cause of action could not be established against Valeron in Texas state court.

B

Holden's subsequent contentions relate to the district court's imposition of monetary sanctions and that court's order to dismiss the lawsuit for Holden's failure to pay costs and sanctions. We consider these allegations under an abuse of discretion standard. *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 566 (5th Cir. 2006). A district court abuses its discretion when that court has an erroneous view of the law or makes a clearly erroneous assessment of evidence. *Id*. An abuse of discretion occurs when "no reasonable person could take the view adopted by the trial court." *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 803 (5th Cir. 2003).

State sanction rules, not federal, "apply to filings in state court, even if the case is later removed to federal court." *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000). But, once a case is removed to federal court, filings in that court are

---

[5] We note that at no point did Holden contest the validity of the evidence supplied by ITW.

6

governed by Rule 11 of the Federal Rules of Civil Procedure. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998). Here, the district court correctly relied on Rule 13 of the Texas Rules of Civil Procedure when it considered ITW's request for sanctions, which related to Holden's complaint filed in Texas state court.

A court may impose sanctions under Rule 13 for a groundless pleading brought in bad faith or to harass an opposing party. Sanctions may also be levied when counsel has failed to make a reasonable inquiry into facts after receiving notice that such facts are incorrect. To interpret Rule 13, Texas courts look to cases that apply Rule 11 of the Federal Rules of Civil Procedure, which "define[] a standard of reasonableness under the circumstances to measure the party's or counsel's conduct." *Monroe v. Grider*, 884 S.W.2d 811, 817 (Tex. App. 1994). Rule 11 also requires that each filing reflect a party or counsel's reasonable inquiry into facts that support the document. FED. R. CIV. P. 11. "Reasonable inquiry means the amount of examination that is reasonable under the circumstances of the case." *Monroe*, 884 S.W.2d at 817. And, trial courts may "impose sanctions for a party's or his counsel's failure to inquire into the facts after he is on notice that the facts are not what he believes." *Id.*; *see also P.N.L., Inc. v. Owens*, 799 S.W.2d 439, 441 (Tex. App. 1990).

Holden asserts that the district court abused its discretion by ordering sanctions because she did not file her Texas lawsuit against Valeron Strength L.P. Rather, she filed her claims against Valeron Strength Films, Co., the firm which Holden alleged had employed her. Indeed, as Holden argues in her brief, during her tenure she received job-related correspondence with the header: "Valeron Strength Films An ITW Company." This letterhead indicated that Valeron was associated with ITW, but it did not indicate that Valeron was an independent legal entity. This stationary may have supplied Holden with the

misguided belief that she could sue Valeron in her first lawsuit. The same can not be said, however, for this case.

During the first lawsuit, ITW repeatedly informed Holden and Houston that Valeron was a division of ITW and could not be sued or served. And, Houston signed a letter in which ITW had requested that Houston voluntarily dismiss Valeron due to this fact or ITW would initiate sanction proceedings. Due to the proceedings in the first case, both Holden and Houston knew that as of 2002, Valeron had ceased to be a recognized limited partnership in Texas. Therefore, the district court did not abuse its discretion by concluding that Houston had not made a reasonable inquiry into Valeron's legal status before filing suit in Texas state court. Furthermore, the district court did not err by ordering Holden and Houston to pay $3,843.80 in attorneys' fees. The Texas Rules of Civil Procedure state that when a court finds a party has violated Rule 13, that court "shall" order the offending party to pay sanctions, which include "the reasonable expenses incurred in obtaining the order, including attorneys fees." TEX. R. CIV. P. 215.1(d). Under this standard, the district court's decision was not unreasonable.

Finally, the district court did not abuse its discretion in dismissing Holden's lawsuit with prejudice. Under Rule 41(b) of the Federal Rules of Civil Procedure, a district court, pursuant to a defendant's motion, may dismiss a lawsuit for a plaintiff's failure to comply with a court order. "Dismissals with prejudice are 'reserved for the most egregious of cases, usually cases where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence'" of several aggravating factors. *Boudwin v. Graystone Ins. Co., Ltd.*, 756 F.2d 399, 401 (5th Cir. 1985) (*quoting Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982)). These factors include: "(1) delay resulting from intentional conduct, (2) delay caused by the plaintiff personally, and (3) delay causing prejudice to the defendant." *Id*. Here, the trial court's orders clearly

8

discussed why that court taxed costs against Holden and, more than a year later, ordered sanctions against her. Holden refused to comply with either order. In addition, Holden and Houston's continued insistence in naming Valeron as a defendant delayed the district court from reaching a conclusion as to the merits of Holden's second lawsuit.

The district court's sanction and dismissal orders appear particularly reasonable when we pause to consider Houston's past behavior in a similar employment litigation case, *Worrell v. Houston Can! Academy*, No. 08-20012, 287 Fed. Appx. 320 (5th Cir. July 16, 2008) (unpublished). In *Worrell*, Houston represented a plaintiff who sued several firms, including a company for whom she did not work. *Id*. at 322. The improperly joined defendant in that lawsuit, like the present matter, repeatedly informed Houston that the plaintiff had sued the wrong party. *Id*. at 322–23. After receiving no response from Houston, the improperly joined defendant moved for dismissal and sanctions. *Id*. The trial court granted the sanction motion and Houston, as in the present matter, declined to pay the sanctions and appealed to us. We affirmed the district court. *Id*. at 322. Despite our mandate, Houston refused to pay the sanctions until he faced a motion for contempt. *Worrell v. Houston Can! Academy*, No. 07-1100, 2010 WL 222902, at *2 (S.D. Tex. Jan. 15, 2010). Eventually, the district court dismissed the case because of the plaintiff's "opprobrious conduct" and "contumacious refusals" to comply with court orders. *Id*. at *2–*3. Now, less than three years later, Houston reappears before us, arguing that another district court has unreasonably dismissed his client's case and ordered sanctions. In light of Houston's history, it is difficult to agree with his interpretation. Instead, we find that the district court did not act unreasonably by ordering sanctions and dismissing Holden's case.

No. 09-20759

III

We AFFIRM the district court's orders for the payment of $5,919.22 in costs and $3,843.80 in sanctions to ITW. Additionally, we AFFIRM the district court's order denying remand and the order dismissing Holden's lawsuit.